UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
ROCHESTER DIVISION

CAYLA DENNING,                          JURY TRIAL REQUESTED

        Plaintiff,                      Index No.

vs.

ROCHESTER INSTITUTE OF
TECHNOLOGY, DAVID C. MUNSON,
MARK OLLES, S. MANIAN
RAMKUMAR and STACY DEROOY,

        Defendants.

## VERIFIED COMPLAINT

Now comes the Plaintiff, Cayla Denning (hereinafter "Ms. Denning" or "Plaintiff"), by and through her attorneys, as and for her Verified Complaint against the Defendants Rochester Institute of Technology, David Munson, Mark Olles, S. Manian Ramkumar and Stacy Derooy (collectively referred to as "Defendants") states herein as follows:

## NATURE OF THE ACTION

1.     Plaintiff Cayla Denning brings this action against Defendants for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 (hereinafter "Title IX"); New York Education Law §12 (hereinafter EDN Section 12); and the New York State Human Rights Law including, gender discrimination, hostile work environment and retaliation (N.Y. Executive Law §§ 290 et seq.) (hereinafter "NYSHRL").

## THE PARTIES

2.      Ms. Denning is a citizen of the State of North Carolina, in Wake County.

3.      Defendant Rochester Institute of Technology (hereinafter "RIT") is a private university duly organized and doing business at 1 Lomb Memorial Drive, Rochester, New York in Monroe County, New York.  RIT's campus is located in the region of the U.S. District Court in the Western District of New York, Rochester Division.

4.      Defendant David Munson was and is employed as President of RIT in Monroe County, New York.  As President of RIT, Defendant Munson has a legal duty to ensure RIT's compliance with the requirements of Title IX, EDN §12 and NYSHRL. Further, upon information and belief, Defendant Munson was the superior and supervisor of the co-Defendants Olles, Derooy and Ramkumar.

5.      Upon information and belief and at all times relevant herein, Defendant Stacy Derooy was and is employed in Monroe County, New York by RIT and served as Title IX Coordinator at RIT.

6.      As such, Defendant Derooy had and has a legal duty to ensure RIT's compliance with the requirements of Title IX, EDN §12 and NYSHRL.

7.      Defendant Mark Olles was and is employed at RIT in Monroe County, New York and during all times relevant to this Complaint Defendant Olles worked as a professor in the College of Engineering Technology at RIT.

8.      Defendant Olles was a professor, the academic advisor and direct supervisor of Ms. Denning during the time she attended and was employed by RIT.

9.      Defendant S. Manian Ramkumar was and is employed at RIT in Monroe County, New York.  Upon information and belief, at all times relevant to this Complaint, Defendant Ramkumar served as Dean of the RIT College of Engineering Technology and had supervisory authority over Defendant Olles.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C §1332 (a) because the parties are citizens of different States and the amount in controversy exceeds $75,000 exclusive of interest in costs.

11.     This Court has subject matter jurisdiction pursuant to 28 U.S. §§ 1331.

12.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over: (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

13.     Venue is proper in the Rochester Division of the U.S. District Court in the Western District of New York pursuant to 28 U.S.C.§ 1391(b)(1) and (2) because, *inter alia,* upon information and belief, the majority of the Defendants reside and work in the Rochester Division in the Western District of New York and are subject to this Court's

personal jurisdiction.

14.     Defendant RIT receives federal funding and financial assistance within the meaning of 20 U.S.C. §§ 1681 (a) and is otherwise subject to Title IX.

## GENERAL ALLEGATIONS

15.     At all times herein relevant, Plaintiff Cayla Denning was a student and employee of RIT.

16.     Defendant RIT is a fully accredited, private university located in Rochester, New York.

17.     Defendant RIT has a published Policy Prohibiting Discrimination and Harassment (C6.0) which asserts that harassing behaviors will not be tolerated toward any member of the community and that the school is committed to non-discrimination, stating:

> Rochester Institute of Technology is a diverse community committed to creating and maintaining a safe and non-discriminatory learning, living and working environment free from sexual harassment and sex-based violence.[1]

18.     Additionally, Defendant RIT considers a hostile work environment (which it is believed encompasses students' learning environments) to be the following:

> Hostile Work Environment means a workplace situation where an employee cannot reasonably perform their work, due to unwelcomed conduct by members of the RIT community which is

---

[1] *See* RIT Policy on Title IX Sexual Harassment for Faculty, Staff and Students, attached as Exhibit A.

based on that individual's group, class or category.[2]

19.     RIT itself also asserts the following:

> **Prohibition**.  RIT does not discriminate and shall take reasonable steps to prevent Discrimination and Harassment, to prevent the recurrence of Discrimination and Harassment, and to remedy the discriminatory effects on members of the RIT Community, if appropriate.  Discrimination and Harassment are also considered a form of employee misconduct subject to disciplinary action per applicable RIT policies.[3]

20.     Cayla Denning is a female student who completed her undergraduate degree in mechanical engineering technology at RIT in May of 2019.

21.     Defendant Olles was and is an associate professor in the Department of Manufacturing and Mechanical Engineering Technology at RIT.

22.     In the fall of 2015, Ms. Denning first encountered Defendant Olles when he was her professor in a fundamentals class.  During the four years she spent on RIT's campus earning her undergraduate degree, she was invited to complete her research studies with Defendant Olles as her academic advisor and was employed by Defendant RIT to work for Defendant Olles in his lab.  He was Ms. Denning's direct supervisor during the entirety of her employment at RIT.

23.     In 2016, Defendant Olles began to sexually harass Ms. Denning.  She was repeatedly subjected to an overall hostile work environment due to the hostile nature of Defendant Olles' conduct, both in and out of her classes and workplace.

---

[2] *See* RIT Policy Prohibiting Discrimination and Harassment, attached as Exhibit B.
[3] *See id.*

24.     Ms. Denning was subjected to multiple incidences of inappropriate and unwelcomed conduct by Defendant Olles.

25.     This inappropriate and unwelcomed conduct was pervasive in that it spanned multiple academic years and unreasonably interfered with Ms. Denning's educational experience.

26.     The inappropriate and unwelcomed conduct of Defendant Olles included expressing romantic intentions for Ms. Denning, inappropriately touching her arm, becoming intoxicated in Ms. Denning's presence, providing alcohol to an underage student in Ms. Denning's presence during a business trip, sending an excessive amount of text messages to Ms. Denning with at least one containing adult themes and providing Ms. Denning with advance answers to quizzes and tests.

27.     All of the above-detailed behaviors and actions, taken together, demonstrated pervasive, unwelcomed conduct that unreasonably interfered with Ms. Denning's educational environment and participation in RIT programs.

28.     As such, the behaviors and actions of Defendant Olles towards Ms. Denning constituted sexual harassment under RIT Policy C6.0.

29.     Further, Ms. Denning was treated differently than her male peers in the mechanical engineering technology program.

30.     Defendant Olles refused to assign projects which allowed her to practice and develop her skills in the machine shop.  For example, when her projects needed something mechanical to be made, Defendant Olles would assign a male student to do it for her, even though she had the same qualifications.  When she asked Defendant Olles why she was not being permitted to complete the assignments and strengthen her

own skills, Defendant Olles told Ms. Denning he did not want her to get hurt because she was a girl and the male students could use the practice to enhance their machine shop skills.

31.     Further, Defendant Olles told Ms. Denning he did not like to work with women.

32.     This discriminatory treatment involved men who were students of the same year and experience level as her. Ms. Denning repeatedly expressed her willingness to learn and complete the assignments without male assistance.

33.     Defendant Olles also would not allow Ms. Denning to lift anything or allow her to be close to hazardous materials while the male students were allowed to perform these tasks, even though she protested this treatment.  This arbitrary treatment made it difficult for Ms. Denning to work as a valued member of the engineering team.

34.     While taking her first environmental science course, Ms. Denning expressed an interest in sustainable energy and even did an environmental studies immersion during her undergraduate education. Defendant Olles called her a "hippy." He stated he would not help her find other work and that she should continue working with him. He prompted other students and faculty to make fun of Ms. Denning by demeaning her interests in sustainable energy.

35.     Ms. Denning reported the discriminatory behavior she had received from male students and male professors to the RIT Engineering Department during a Women in Technology meeting.  Upon information and belief, the meeting was related to the COMETS scholarship and was video recorded.

36.     During that Women in Technology meeting, Ms. Denning told the members of the Engineering Department that she was not being treated equally as a female in the engineering department.  No action was taken by any of the Defendants as a result of her complaints.

37.     While working with Defendant Olles, Ms. Denning completed two projects for NASA.  Both of the NASA projects involved traveling to Houston as a group to present the project.  The trip for the first project was in June of 2017. Ms. Denning travelled to Houston with Defendant Olles and another male student in Ms. Denning's class year.

38.     While in Houston, Ms. Denning and the other student were invited each night to Defendant Olles' hotel room, ostensibly to practice their presentation.  They were invited to stay late into the evening and sometimes fell asleep.  On those occasions, Defendants Olles did not wake them up until morning.

39.     One night, Defendant Olles began to tickle Ms. Denning and the other student and to discuss which sexual positions he liked best.  He also told Ms. Denning and the other student about a game he played with his friends in graduate school that involved partially disrobing to exhibit their private parts.  It was a game from a movie and Defendant Olles showed them a clip of the movie.

40.     On several occasions during the same trip, Defendant Olles drank several alcoholic beverages during dinner and then insisted on driving the students back to the hotel room. Ms. Denning always expressed her concern and offered to drive, but he refused and stated that he was fine and knew what he was doing.

41.     One night when Ms. Denning and the other student went to Defendant Olles' room to practice, Defendant Olles had bought a bottle of liquor for Ms. Denning

and the other student to drink with him in his room. At this time, Ms. Denning was 20 years old and could not consume alcohol legally.

42.    On that night, Ms. Denning asked Defendant Olles why he had selected her to work with him as compared to some of his older students who were much more experienced. Ms. Denning expressed her concern that she wanted to be considered a valued team member because of her intelligence and not because she was a "token female". Defendant Olles assured Ms. Denning that she was a part of the group because of her work ethic.

43.    However, as the conversation continued, Defendant Olles moved closer to Ms. Denning and put one arm around her on the couch and touched the inner part of her forearm with his other hand, whispering that her skin was softer than he thought it would be. This made Ms. Denning extremely uncomfortable and she immediately asked him to stop.

44.    Defendant Olles continued to ask Ms. Denning personal questions about her past and revealed his own personal information to Ms. Denning. This made Ms. Denning even more uncomfortable and she left the room as quickly as possible.

45.    Throughout the last day of the trip and during the trip home, Defendant Olles texted Ms. Denning repeatedly, frequently mentioning the personal information about past negative personal experiences he had discussed with her in the hotel room.

46.    After their arrival back in Rochester, Defendant Olles continued texting Ms. Denning about personal things after work, late into the evening and during weekends. Defendant Olles texted about his family, his unhappiness and was frequently complaining about his wife.

47.     Around the same time, Defendant Olles began texting about Ms.
Denning's relationship with her boyfriend.

48.     The texts continued over the following year.  Defendant Olles would often
tell Ms. Denning that he was afraid his wife would see the text messages and they
needed to stop texting but he would then continue to text about personal matters.  He
often told her he was deleting all the messages so his wife could not read them.

49.     Ms. Denning was afraid to not respond to his text messages.  She knew
that Defendant Olles controlled much of her life – as he was her supervisor for both her
education and for her job, and she feared retaliation.

50.     In June of 2018, Defendant Olles supervised another NASA trip to
Houston.  This time, a larger group of six students attended, including Ms. Denning.
Ms. Denning was extremely anxious the entire trip and wanted to avoid spending time
alone with Defendant Olles.  Once again, Defendant Olles invited students to his hotel
room to complete the project and practice presentations.  Defendant Olles again bought
alcohol and drank with the students in his room.

51.     The summer after the second NASA trip, Ms. Denning was hired to work
in a lab with Defendant Olles.  Ms. Denning was the only student being supervised by
him and much of her time was spent in the lab doing research projects with him alone.
With some of her projects, Defendant Olles invited her to go on business trips down to
Picatinny Arsenal to sit in on important meetings.  These trips involved five -or-six-
hour car rides alone.  Defendant Olles continued texting Ms. Denning during her
personal time asking how she was, telling her he was "making sure she was okay" and
"getting to bed on time".  Sometimes, Defendant Olles would tell Ms. Denning to go to
bed when he thought it was necessary for her be asleep and even told Ms. Denning he
would buy her clothes if she needed them and help with her finances in any way she

needed.

52.    In 2018, Defendant Olles began drinking alcohol (usually Guinness beer or vodka) while in the lab during work hours and even offered some to Ms. Denning.  He also kept alcohol in a mini fridge and freezer that was in his office.

53.    Feeling trapped with no other choice, Ms. Denning continued her education with Defendant Olles, finishing her undergraduate degree in 2019.

54.    At the beginning of the summer of 2019, Defendant Olles asked Ms. Denning to come to his house for his family gathering on Memorial Day.  Ms. Denning felt this to be inappropriate and did not go. Defendant Olles became angry and verbally abused her.

55.  In June of 2019, Defendant Olles and Ms. Denning attended a conference that lasted six days.  When they arrived at the hotel, Ms. Denning needed to print something.  Defendant Olles, who had carried Ms. Denning's computer on the plane, took her computer to his hotel room.  Rather than be in a position where she needed to go to his hotel room, Ms. Denning used the hotel computer.  Defendant Olles told Ms. Denning to just come to his hotel room, but she was uncomfortable to be alone with him in a hotel room.   Later, Defendant Olles told Ms. Denning she would need to come to his hotel room to plan which events they would go to and to get her computer.

56.    Ms. Denning asked Defendant Olles to instead meet her in the lobby. When he refused, she reluctantly went to his hotel room to obtain her belongings. When she got to his room, he asked her to stay and watch a movie.  Ms. Denning refused.

57.     Later in the week, Defendant Olles asked Ms. Denning to go to a bar for dinner.  Even though Ms. Denning said she was tired, she agreed to go because they only had one car and she needed to get dinner.  Throughout this day at the conference and during dinner that night, he kept asking Ms. Denning what she thought of him. When Ms. Denning laughed it off and didn't answer, Defendant Olles became increasingly annoyed.  At the bar after a few drinks, Defendant Olles asked again more persistently and Ms. Denning replied that she thought he was a good instructor and advisor.  Defendant Olles said "what else" and "that's …not what I meant."  When Ms. Denning asked him what he meant, he looked at her and said, "Come on, you know."

58.     On the way back to the hotel, Defendant Olles kept asking Ms. Denning the same questions and she kept refusing to answer and told him she didn't want to talk about this and wanted to keep it professional.  Defendant Olles kept saying that he couldn't keep it in anymore and he needed to tell her something.

59.     Defendant Olles confessed to Ms. Denning he had romantic feelings for her.  Ms. Denning told him she just wanted a professional relationship between a professor and student.  Defendant Olles told her he had never felt this way about anyone else before (even his wife) and he did not know how to handle it.  He also told Ms. Denning that he had never felt any emotion at all before he met her.  Ms. Denning was deeply concerned and disturbed.  Defendant Olles suggested that she was stupid for putting herself in a position where she was alone with him because he could have decided to do something if he had wanted.

60.     In response to Ms. Denning's rejection, during the summer of 2019, Defendant Olles retaliated by failing to supervise her in her work, failing to give her with new assignments, and failing to provide her proper guidance or direction to adequately do her job.  Ms. Denning and another student presented Defendant Olles with deliverables but were never told what they were moving forward with after they

presented them. When Ms. Denning asked what to work on, Defendant Olles snapped at her saying that he should not have to tell her what to do and she should know what to do automatically because he was paying her a lot of money.

61.     Ms. Denning worked on what she could but spent the majority of the summer with little if any work because she had no guidance and no new assignments. Defendant Olles began coming into the lab and purposefully ignoring her, only talking to the other student.  Defendant Olles also stopped letting Ms. Denning have any input on decisions where she had the requisite experience to contribute and had so contributed in the past.

62.     Despite the failure to give any instruction to Ms. Denning, when she would attempt to work on the one project he gave her, he criticized her efforts.  By the end of the summer, Ms. Denning had spoken with the other student she worked with and they agreed Defendant Olles was treating them both unfairly.

63.     During the fall semester of 2019, Ms. Denning was supposed to start her Ph.D. with Defendant Olles as her advisor.  Ms. Denning had begun to question her willingness to continue working for him.  Ms. Denning requested a meeting with him to discuss her future. In that meeting, she told Defendant Olles she could not be in the Ph.D. program anymore because she wanted to do more sustainability projects and the fact that he had feelings for her made her uncomfortable.  As soon as Ms. Denning said this, Defendant Olles started shaking his head, putting his hands over his face and very harshly told Ms. Denning to stop talking and listen to him.

64.     Defendant Olles told Ms. Denning he should not have told her that he had feelings for her.  He would not allow her to express her frustration and told her to stop talking.  He apologized for the "misunderstanding."

65.     All of Ms. Denning's projects and past experiences concerned one discrete subject area, with Defendant Olles as her supervisor.  This meant that Ms. Denning's entire resume was based on him as a reference.  She felt trapped.  She felt like there was no way out due to the position of authority and power he held over her as her professor, advisor, and supervisor.

66.     In the fall of 2019, Ms. Denning realized Defendant Olles' behavior constituted sexual harassment and violated Title IX.  She filed an official report against Defendant Olles.

67.  Ms. Denning began to get more and more anxious about being around Defendant Olles, or even the possibility of running into him. She eventually abandoned her studies and left RIT.

68.     Ms. Denning reported an official Title IX complaint relating to Defendant Olles to Defendant RIT on December 5, 2019.  Per Defendant RIT Policy, "The investigation [was to] be conducted within sixty (60) Business Days of the receipt of a request for investigation."

69.     It was not until more than six months later, on June 29, 2020, that Defendant RIT concluded its investigation.  RIT found, based on a preponderance of the evidence, that Defendant Olles violated RIT Policies C06.0 section (II)(O)-Sexual Harassment of RIT's Policy Prohibiting Discrimination and Harassment, C00.0 Compliance Policy and Code of Ethical Conduct and P03.-Honor Code.

70.     Defendant RIT further stated:

Based on the interviews conducted with you, the Respondent, witnesses, as well as relevant emails and text messages exchanged you and the Respondent

(sic), it is determined that the Respondent engaged in multiple incidents of inappropriate and unwelcomed conduct. This inappropriate and unwelcomed conduct was pervasive, in that it spanned multiple academic years, and unreasonably interfered with your educational experience in violation of applicable RIT policies. It included expressing his romantic intentions for you, inappropriately touching your arm, becoming intoxicated in the presence of you, providing alcohol to underage student (sic) in the presence of you during a business trip in 2017, sending an excessive amount of text messages to you with at least one containing inappropriate adult themes, and providing you with advance answers for tests and quizzes. All of these behaviors and actions, taken together, demonstrate pervasive, unwelcomed conduct that unreasonably interfered with your educational environment and your participation in RIT programs. This constitutes sexual harassment under RIT Policy C6.0 and is contrary to RIT Policy P3.0 Honor Code. In addition, providing alcohol to an underage student during a business trip to Houston/NASA in 2017, in inconsistent with applicable law and therefore a violation of RIT's Policy C0.0(III)(6).[4]

71.      During the Title IX investigation, Defendant Olles admitted to calling Ms. Denning terms like, "love", "hun" and "sweetie" to address her and admitted he had used the term "sweetie" with other females in his class, even though he knew he should not.

72.      Another witness in the Title IX investigation corroborated Ms. Denning's testimony that the work environment during the summer of 2019 was horrible and that Defendant Olles treated the students poorly.

73.      Ms. Denning was humiliated, ostracized and singled out in her classes and felt she could not continue to learn in such a hostile environment. It is undisputed she was denied equal educational opportunities while she attended school at RIT, prompting her decision to drop out of RIT altogether due to the hostile environment created by Defendant Olles. Further, she has suffered severe emotional and mental

---

[4] *See* RIT Title IX outcome letter, redacted to protect Jane Ms. Denning's identity, attached as Exhibit C.

health issues as a result.

74.    Title IX, EDN §12, NYSHRL and basic principles of state tort law such as negligence, require that a school provide reasonable and prompt resolution of sex discrimination complaints as well as prevent sex discrimination and harassment and provide reasonable accommodations so that students do not suffer from further effects of discrimination.  However, Defendant RIT's process in handling Ms. Denning's sexual harassment complaints can be described as anything but prompt and reasonable.

75.    Due to the actions and the failure to act by the Defendants, Ms. Denning experienced a loss of educational opportunities, including but not limited to a loss of an educational space to safely study, a loss of feeling safe while on campus and a loss of being able to continue her education and job without being singled out and discriminated against by Defendant Olles.  Additionally, Ms. Denning suffered pain and suffering and, upon information and belief, will continue to suffer pain and suffering in the future.

### COUNT I:

### COUNT AGAINST ROCHESTER INSTITUTE OF TECHNOLOGY

### Violation of Title IX-20 U.S.C. § 1681 and NY EDN §12

### Hostile Educational Environment

76.    Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1-75 as though fully set forth herein.

77.    Plaintiff was subjected to sexual discrimination and harassment.  RIT became a sexually hostile environment where her professor, advisor and supervisor, Defendant Olles, continued to sexually harass her and induce a sexually hostile atmosphere in his classes due to his inappropriate behavior.  Plaintiff's educational experience was permeated with discriminatory intimidation, ridicule, and insult that

was so sufficiently severe and pervasive so as to alter the conditions of Plaintiff's educational environment.

78.     Because of the ongoing sexually hostile environment that Defendant RIT allowed to continue for years, Plaintiff suffered losses of educational opportunities and benefits, along with injuries, damages and losses, including but not limited to: damage in her pursuit of higher education; fear, anxiety, trauma and emotional distress and deprivation of her civil rights.

## COUNT II:
## COUNT AGAINST DEFENDANTS ROCHESTER INSTITUTE OF TECHNOLOGY, MUNSON, OLLES, DEROOY, AND RAMKUMAR

### Gender Discrimination and Workplace Sexual Harassment and Discrimination pursuant to New York Human Rights Law

79.     Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1-78 as though fully set forth herein.

80.     Plaintiff was a female employee of Defendant RIT and a member of a protected class.

81.     Plaintiff was employed at RIT and worked under the supervision of Defendant Olles.

82.     Defendant RIT and Defendant Olles discriminated against Plaintiff on the basis of her sex/gender in violation of NYSHRL by denying Plaintiff the same terms and conditions of employment available to male employees, including subjecting Plaintiff to disparate working conditions, denying her request for equal support and denying Plaintiff the opportunity to work in an environment free of unlawful

harassment.

83.     Defendant RIT discriminated against Plaintiff on the basis of sex/gender in violation of NYSHRL by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of her sex/gender.

84.     As a direct and proximate result of Defendants unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer economic and emotional distress, depression humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

## COUNT III:
## COUNT AGAINST DEFENDANTS ROCHESTER INSTITUTE OF TECHNOLOGY, MUNSON, OLLES, DEROOY, AND RAMKUMAR
### Retaliation pursuant to New York Human Rights Law

85.     Plaintiff re-alleges and incorporates the allegations set forth above in Paragraphs 1-84 as though fully set forth herein.

86.     Defendant has retaliated against Plaintiff, in violation of NYSHRL, for opposing and/or complaining of Defendant Olles' sexual harassment and unlawful discriminatory practices against herself by subjecting Plaintiff to acts of discrimination, harassment and humiliation, mockery, encouraging and/or coercing Plaintiff's co-workers to falsely contradict Plaintiff's truthful allegations of discrimination, harassment and/or retaliation.

87.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer economic and emotional distress, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

88.     As a result of Defendant's conduct, Plaintiff has suffered and is entitled to recover damages, including the value of lost back wages and benefits, lost future earnings and benefits, compensatory damages for emotional distress, punitive damages and attorneys' fees and costs.

## COUNT IV:
## COUNT AGAINST DEFENDANTS ROCHESTER INSTITUTE OF TECHNOLOGY, MUNSON, OLLES, DEROOY, AND RAMKUMAR
### Hostile Work Environment pursuant to New York Human Rights Law

89.     Plaintiff re-alleges and incorporates the allegations set forth above in Paragraphs 1-88 as though fully set forth herein.

90.     Defendant discriminated against Plaintiff by subjecting Plaintiff to a hostile work environment, in the form of unwelcome sexual and gender-based harassment which was severe and pervasive in violation of NYSHRL.

91.     As a direct and proximate result of this unlawful discriminatory conduct in violation of NYSHRL, Plaintiff suffered and continues to suffer economic and noneconomic damages, including, but not limited to, lost wages, severe mental anguish and emotional distress, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is

entitled to an award of monetary damages and other relief.

92.    As a result of Defendant's conduct, Plaintiff has suffered and is entitled to recover damages, including the value of lost back wages and benefits, lost future earnings and benefits, compensatory damages for emotional distress, punitive damages and attorneys' fees and costs.

## COUNT V
## COUNTS AGAINST DEFENDANTS ROCHESTER INSTITUTE OF TECHNOLOGY, MUNSON, RAMKUMAR AND DEROOY
### Negligence, Negligent Hiring, Training, Retention and Supervision

93.    Plaintiff re-alleges and incorporates the allegations set forth above in Paragraphs 1-92 as though fully set forth herein.

94.    Defendants knew or should have known of the wrongful conduct of Defendant Olles and/or his propensities to act in a dangerous, reckless, offensive and/or harmful manner.

95.    Defendants Munson, Derooy and Ramkumar negligently failed to supervise, investigate, reprimand and/or report Defendant Olles and failed to take reasonable steps to ensure Plaintiff could safely continue her education at RIT, free of sexual discrimination and a sexually hostile work environment.

96.    Based on the aforementioned facts and circumstances, it is believed Defendants Munson and Ramkumar had supervisory authority over Defendant Olles. It is further believed that Defendant Munson had supervisory authority over Defendant Derooy and Defendant Ramkumar and RIT employees and/or agents.

97.     Upon information and belief, Defendant Derooy did not have the requisite credentials and training to perform the job of Title IX Coordinator and her continued employment by Defendant RIT as Title IX Coordinator, resulted in negligent hiring, training, supervision and retention on its behalf. Ms. Denning reported that before the fall of 2019 she did not know who to report to regarding Defendant Olles's behavior and was not even aware his behavior was sexual harassment. Had Defendant Derooy properly complied with the requirements of Title IX, Ms. Denning would have been provided this information at RIT and possibly have been able to report Defendant Olles illegal and offensive conduct earlier.

98.     Upon information and belief, Defendant Olles did not have the requisite credentials and training to perform the job of professor and that this was the result of Defendant Munson and Ramkumar's negligent hiring, training, supervision and retention of Defendant Olles. Further Defendant Olles did not act competently in his performance as an engineering professor by openly engaging in sex discrimination due to his harassment of Ms. Denning in her educational pursuits as well as in her role working for Defendant RIT.

99.     Based upon the aforementioned facts and circumstances, Defendants Munson, Derooy and Ramkumar and other RIT employees and/or agents failed to comply with the policies and procedures required of Title IX as well as RIT policies and procedures relating to sexual misconduct, assault and harassment and workplace discrimination.

100.     Furthermore, it is believed Defendant RIT and Defendant Munson had supervisory authority over Defendants Olles, Ramkumar and Derooy and negligently hired, trained, supervised and retained them due to Defendants Olles, Ramkumar and Derooy's failure to comply with the requirements of Title IX and RIT policies and procedures relating to sexual discrimination, sexual assault and harassment and

workplace discrimination.

101.     As a proximate result of said negligence, Plaintiff incurred the damages described herein.

## COUNTS VI, VII, VIII:
## COUNTS AGAINST DEFENDANT MARK OLLES
### Intentional Infliction of Emotional Distress, Sexual Harassment, Harassment

102.     Plaintiff re-alleges and incorporates the allegations set forth above in Paragraphs 1-101 as though fully set forth herein.

103.     Based on the information described above, Defendant Olles' repeated sexual harassment and intimidation of Ms. Denning resulted in the intentional infliction of emotional distress and sexual harassment and general harassment against Plaintiff.

104.     As a result, Plaintiff suffered damages and seeks compensation for her emotional distress as a result of Defendant Olles' actions.

## COUNT IX:
## COUNT AGAINST DEFENDANTS ROCHESTER INSTITUTE OF TECHNOLOGY, MUNSON, RAMKUMAR AND DEROOY
### Vicarious Liability

105.     Plaintiff incorporates herein by reference each of the foregoing paragraphs as if fully copied and set forth below and further states:

106.     Defendants authorized and empowered Defendant Olles to act as their agent, employee and/or servant of RIT.

107.    Upon information and belief at all times relevant hereto, Defendant Olles acted in all of his activities related to his role as a engineering professor at RIT at the direction, and with the approval of, Defendants and in all of their activities related to RIT with the approval of Defendants, under the supervision, control and/or guidance of each Defendant respectively.  Defendants employed, authorized and/or empowered to act on their behalf the Defendant Olles to act as agent and/or servant of RIT.

108.    Defendants are vicariously liable for the actions of their employee, agent and/or servant Defendant Olles and/or other unknown employees, agents and/or servants, and/or other unknown employees, agents and/or servants because they knew or should have known of the sex discrimination and/or knew or should have known of the sexually hostile atmosphere and of the conduct and the allegations of harm perpetrated upon the Plaintiff.

109.    As a proximate result of said vicarious liability, Plaintiff incurred the damages described herein.

## COMPENSATORY DAMAGES

110.    Plaintiff incorporates herein by reference each of the foregoing paragraphs as if fully copied and set forth below and further states:

111.    As a direct and proximate result of Defendants' conduct as described above, Plaintiff has incurred or may incur medical and/or counseling expenses, suffered severed, permanent emotional distress, lost educational opportunities, and will continue to incur such expenses and emotional injuries in the future, all to the damages of Plaintiff, which exceed the jurisdictional minimum of this Court.

112.    As a direct and proximate result of the conduct of the Defendants as set forth herein above, the Plaintiff has incurred and will continue to incur expenses for psychological treatment and care which exceeds the jurisdictional minimum of this Court.  Further, Plaintiff has suffered a diminution of earning capacity and/or lost wages, both past and future, and future career opportunities due to her having to end her pursuit of a Ph.D. due to the hostile atmosphere perpetuated by her advisor professor and supervisor, Defendant Olles.

## PUNITIVE DAMAGES

113.    Plaintiff incorporates herein by reference each of the foregoing paragraphs as if fully copied and set forth below and further states:

114.    Defendants acted with oppression, fraud, malice, reckless, callous and/or flagrant indifference in relation to the Plaintiff.

115.    By acting with oppression, fraud, malice, reckless, callous and/or flagrant indifference to the Plaintiff, Defendants caused irreparable harm to the Plaintiff for which punitive damages are appropriate (in relation to the above-referenced claims where punitive damages are possible).

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff seeks a judgment against all named Defendants, jointly and severally, in an amount which exceeds the jurisdictional limit of all Courts of lower jurisdiction, to be determined by a jury for:

A.    A monetary judgment against Defendants in an amount that will fully compensate Plaintiff for her injuries and damages;

B.      A judgment of appropriate punitive damages against Defendants in an amount sufficient to punish the Defendants for their willful, wanton, oppressive, fraudulent, malicious, and/or grossly negligent conduct;

C.      Her costs herein expended including reasonable attorneys' fees; and pursuant to 42 U.S.C. § 1988(b);

D.      An award of post-judgment interest in the amount allowed by statute;

E.      Trial by jury of all issues so triable;

F.      Her emotional distress, past, present and future;

G.      Her humiliation, past, present and future;

H.      Her embarrassment and mental anguish, past, present and future;

I.      Past, present and future medical expenses;

J.      Past, present and future lost wages and the ability to earn a living as well as diminished earning capacity; and

K.      Her pain and suffering.


**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory and punitive damages, her costs expended herein, including attorneys' fees, trial by jury on all issues so triable; and any and all further legal and equitable relief to which she may appear entitled.


Date:  February 2, 2021                         Respectfully Submitted,


Christopher J. O'Brien, Esq.
O'Brien & Ford, P.C.
*cobrien@obrienandford.com*
4925 Main Street, Suite 222
Buffalo, NY 14226
TEL: (716) 907-7777
Fax: (716) 768-0948

Lindsay Cordes (to be admitted *pro hac
vice*)
THOMAS LAW OFFICES
*Lindsay.cordes@thomaslawoffices.com*
9418 North Commons Blvd., Suite 200
Louisville, KY 40059
TEL: (877) 955-7001
Fax: (502) 791-8352

Jennifer Liakos, Esq. (to be admitted *pro
hac vice*)
Liakos Law
*Jenn@jennliakoslaw.com*
4216 Pacific Coast Highway, Unit 1311
Torrance, CA 90505
TEL: (310) 961-0066

*Attorneys for Plaintiff, Cayla Denning*

## VERIFICATION

Comes CAYLA DENNING, after first being duly sworn, states that she is the Plaintiff herein, that she has read the allegations contained in this Complaint and that they are true to the best of her knowledge.

_____
CAYLA DENNING

01/20/21
DATE

STATE OF NORTH CAROLINA
COUNTY OF _Wake_

28th

Sworn and subscribed before me by Cayla Denning on this ~~42th~~ day of January,

2021.

_____
NOTARY PUBLIC, STATE AT LARGE

My Commission Expires: _February 25, 2024_

BRADLEY S KENT JR
NOTARY
PUBLIC
My Comm. Exp.
Feb 25, 2024
Wake County
NORTH CAROLINA